IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION AT AKRON

_____

| | |
|---|---|
| **KATHARINA A. SNYDER**<br>823 Davis Street<br>Akron, Ohio 44310-4013<br><br>      Plaintiff,<br>*v.*<br><br>**OHIO ENVIRONMENTAL**<br>**PROTECTION AGENCY**<br>c/o Laurie A. Stevenson, Director<br>P. O. Box 1049<br>Columbus, Ohio 43216-1049<br><br>      Defendant. | Case No. _____<br><br>Hon. _____<br>  United States District Judge<br><br>Hon. _____<br>  United States Magistrate Judge<br><br>**COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Katharina A. Snyder ("Snyder"), through her undersigned counsel of record, for her cause of action hereby alleges the following:

1. Snyder is a resident of the City of Akron in Summit County, Ohio.

2. [Reserved.]

3. Defendant Ohio Environmental Protection Agency ("OEPA") is an agency of the State of Ohio charged with investigating and enforcing laws and regulations promulgated by the State of Ohio for the protection of the state's environment. OEPA's principal offices are located at 50 West Town Street in the City of Columbus, Ohio, and the agency's mailing address is P.O. Box 1049, Columbus, Ohio 43216-1049.

3. OEPA discharges its duties through five (5) district offices, one of which is the Northeast District Office ("NEDO"), located at 2110 East Aurora Road in the City of Twinsburg, Summit County, State of Ohio. OEPA has more than 20 full-time employees, approximately 120 of which are assigned to NEDO.

4. As of the date this complaint is filed with the Clerk of this court, Snyder is a full-time employee assigned to NEDO.

5. [Reserved.]

6. The district offices of the OEPA review permit applications, investigate citizen complaints. investigate and oversee clean-ups of spills and releases, monitor compliance with environmental standards, provide technical assistance to help regulated facilities understand and comply with environmental laws and permit requirements, initiate enforcement action against facilities that are not in compliance, provide environmental information and other assistance to the public, coordinate public records requests, and give public presentations respecting other issues and matters falling within the agency's jurisdiction.

## JURISDICTION AND VENUE

7. This court has jurisdiction over the parties and the subject matter of this civil action under 28 U.S.C. §§ 1331 and/or 1367 inasmuch as Snyder's claim for unlawful employment discrimination arises under the laws of the United States, *to-wit*, the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, as amended, and Snyder's other causes of action recited herein, individually and collectively, otherwise present claims that are so related to the claim over which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue for this civil action is proper in the Eastern Division of this court, sitting in Akron, by operation of 28 U.S.C. § 1391(b)(2) and Rules 3.8(a) and 3.8(b) of the Local Rules for the United States District Court for the Northern District of Ohio.

**COMMON ALLEGATIONS**

9. Snyder commenced her employment with OEPA on April 4, 1994, and as of the date this complaint was filed with the Clerk of this court, she remains on OEPA's payroll as a full-time employee holding the title of Environmental Specialist 2. In such capacity, Snyder is a member of the union serving as the collective bargaining agent for Snyder and similarly-situated OEPA employees assigned to NEDO and is entitled to all rights and privileges extended to the members of her union holding "Environmental Specialist" positions subject to the terms and conditions of a certain collective bargaining agreement.

10. [Reserved.]

11. Snyder is on the staff of the Division of Materials and Waste Management ("DMWM") at NEDO. Her immediate supervisor, for all purposes hereunder, is Lynn Sowers ("Sowers"). In her division, Snyder is the most senior of all but one of her peers (*i.e.*, those holding the titles of "Environmental Specialist" and "Geologist"), nine (9) of whom are male and four of whom (including Snyder) are female. Among her peers, Snyder has more seniority than all but one male employee.

12. [Reserved.]

13. In late-October of 2017, opportunities to work overtime hours were ordered by Sowers for DMWM staff members. A provision of the collective bargaining agreement applicable to those in the "Environmental Specialist" job classification provides that such opportunities are

to be offered to eligible staff members who make themselves available for such work and individual offers to work overtime then are to be extended according to seniority. Snyder, as the senior-most eligible staffer who volunteered to work overtime, therefore should have been given the first offer for overtime duty by Sowers. Relevant excerpts of the collective bargaining agreement pertaining to the administration and assignment of overtime opportunities and seniority rights and privileges at NEDO are reproduced in **Exhibit A**, each of which is hereby incorporated by reference as if fully rewritten herein.

14. In all, about 100 hours of overtime were authorized by Sowers from October 28, 2017, through sometime in November 2017 and not once was Snyder or her female peer, Clarissa Gereby ("Gereby"), offered a single overtime opportunity. Instead, Sowers and, upon information and belief, others in NEDO management systematically offered each such overtime opportunity to only the more junior male staff members in DMWM.

15. On October 30, 2017, Gereby confronted Sowers about a rumor that senior management had consciously chosen only male workers for overtime. Sowers confirmed that only male employees were offered the overtime assignments because management "felt uncomfortable" about "sending females out to the 'hood" in East Cleveland.

16. Following Gereby's interaction with Sowers, as alleged in Paragraph 15, above, Snyder and Gereby approached their union leadership about the situation and the union president spoke with Sowers on October 31, 2017. However, no corrective action was taken or offered by way of compensating female staff members for missed overtime opportunities. Indeed, later that very day, Sowers again passed over all female staffers when she asked a junior male staffer to work overtime to pick up and run samples from the East Cleveland site referenced in Paragraph

15, above, to a transfer point in the Mansfield area, work that, once again, should have been offered to one of the more senior female staff members before offering it to the junior male staffer.

17. On November 3, 2017, Gereby confronted Sowers about the October 31, 2017, assignment of the sample transfer agent work referenced in Paragraph 16, above. Snyder herself then personally confronted Sowers about the ongoing situation with the failure or refusal of NEDO management to offer overtime opportunities to female staff members. Sowers had no explanation for why only men could be counted on to work at the East Cleveland site when all they would be required to do would be to watch equipment provided by the United States Environmental Protection Agency all night because it was the federal agency's policy that its equipment could not go unattended.

18. Grievances under the collective bargaining agreement were filed, but languished at Step Two of the adjustment process at the time Snyder commenced a charge of employment discrimination to seek redress for what she regards as abject sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. Snyder asserts that OEPA has discriminated against the female workers in her division respecting terms and conditions of employment, *viz.*, in the assignment of overtime opportunities, strictly on the basis of their gender and that such discrimination extends to the manner in which overtime opportunities are administered and offered in disregard of the rights to which each female NEDO staff member is entitled under the terms of the collective bargaining agreement referenced in Paragraph 13, above.

19. Snyder filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 20, 2018, charging OEPA with having discriminated against NEDO staff members in the administration and assignment of overtime opportunities on the basis of sex (Female). The EEOC designated Snyder's charge as Charge No. 532-2018-00221

5

("EEOC Charge"). The EEOC terminated its investigation into Snyder's EEOC charge on October 28, 2019, and issued a right-to-sue notice to Snyder on such date. However, the envelope in which such right-to-sue notice was delivered to Snyder bears a postmark of October 30, 2019, and Snyder does not recall receiving such notice at her home before November 1, 2019.

20. Snyder filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on April 19, 2018, and made the same allegations of discrimination on the basis of sex (Female) that she referenced in the EEOC Charge. The OCRC designated Snyder's charge as Charge No. AKR73(39523)04192018; 22A-2018-02052C ("OCRC Charge"). On June 7, 2018, the OCRC decided to close its file respecting the OCRC Charge for its administrative convenience, dismissing the same on the grounds that the EEOC Charge, filed by Snyder, was pending before the EEOC "asserting the same basis and issues" as those asserted by Snyder in the OCRC.

21. [Reserved.]

22. [Reserved.]

### ALLEGATIONS RESPECTING OVERTIME DISTRIBUTION AT NEDO

23. OEPA claimed in its response to the EEOC Charge that overtime distribution at NEDO is determined by (1) the "location" of the "site" where the work is to be performed as well as (2) the employee's skill set, familiarity with the "site," and availability and that Snyder did not receive any of the East Cleveland overtime assignment opportunities extended by Sowers, as alleged in Paragraphs 13 and 14, above, because she was not "assigned" to "the facility or county where the work to be done … was located."

24. Notwithstanding the response referenced in Paragraph 23, above, there is no logical nexus between OEPA's claim that overtime opportunities were made available on the basis of the "location" of the "site" of the work and whether Snyder was "assigned" to the "site" in that

"location" inasmuch as "assignment" is not synonymous with "location" and an individual staff member's "assignment" was not one of the overtime distribution criteria found in the provisions of the collective bargaining agreement listing the criteria to be used in extending overtime opportunities to "Environmental Specialist" staff members at NEDO.

25. The "location" where each overtime opportunity in question presented itself was described by Sowers as "the 'hood" and Sowers said that she did not want to send female employees into "the 'hood."

26. Given Sower's logic, as alleged in Paragraph 25, above, it follows that if female employees are not to be sent into "the 'hood" because they are female, it did not matter whether Snyder was "assigned" to any given "site," as overtime opportunities always would be denied to female employees when the "site" is located in "the 'hood" or to a "county" that contains a "'hood." Hence, skill set, familiarity with any given "site," and availability did not matter to Sowers or to others in NEDO management if such considerations were trumped by considerations of (a) the site's "location" in a "'hood" and (b) the sex of each overtime-eligible employee who could be considered for assignment to any such site. Every employee classified as an "Environmental Specialist" assigned to NEDO is considered equally skilled, familiar, and available to perform all required work duties falling within their job descriptions, regardless of the "location" of any given site. Thus, an employee's sex became a determining factor when NEDO management made decisions that denied female overtime-eligible employees their respective opportunities to receive overtime assignments.

27. In responding to the EEOC Charge, OEPA claimed that female NEDO employees in DMWM "averaged" more overtime hours over the past four years than male employees,

7

but the numbers provided to the EEOC by OEPA in tables supporting this contention were misleading. Specifically, of the eleven (11) employees holding the title of "Environmental Specialist" in DMWM at NEDO, from January 1, 2014, through December 31, 2017, five were female and six were male, but OEPA's response to the EEOC failed to incorporate overtime for the additional female "Environmental Specialist" employed before April 2017, did not identify the gender associated with each of the overtime hours worked by individual employees, and presented hours that conflicted with the data obtained by Snyder's Public Records Act requests that were not produced by OEPA until Snyder prosecuted a mandamus action in the Supreme Court of Ohio to force OEPA to turn over such records. Specifically, it was impossible to reconcile hours listed by OEPA in the table it submitted to the EEOC for Snyder, Gereby, and four male "Environmental Specialist" employees in DMWM with the data reported through the documents finally uncovered through the mandamus action in response to Snyder's Public Records Act requests. Moreover, the data furnished to the EEOC included managers or supervisors who, by virtue of their duties, were not eligible for overtime compensation opportunities, but should have included an additional female "Environmental Specialist" who worked in DMWM at NEDO until April 2017.

28. The tables furnished to the EEOC by OEPA in response to the EEOC Charge failed to take into account the absence of a gender-neutral process for distribution overtime opportunities since, as Sowers confirmed in conversations with Gereby and Snyder, that if a "site" was located in "the 'hood," female employees were routinely excluded from consideration for overtime assignments.

29. Snyder's examination of averages for larger NEDO populations of staff members eligible for overtime assignments established that male employees were offered overtime opportunities more frequently than female employees in all relevant time periods. For example, in

8

2016, NEDO's staff of overtime-eligible "Environmental Specialists" and "Geologists" included 50 female employees (39.37%) and 77 male employees (60.63%). Yet, female employees at NEDO received 1,587.58 hours of overtime (or 26.86% of the total available hours) and male employees received 4,323.73 hours of overtime (or 73.14%). Similarly, in 2017, there were 52 overtime-eligible female NEDO employees (41.27%) and 74 male employees (58.73%), yet female employees received only 1,108.23 of the available overtime hours (or 25.07% of the total available hours) while male employees received 3,312.05 hours of overtime (or 74.93%). These same sorts of anomalies were noted upon Snyder's review of statistical data for male and female NEDO staff members in 2018 when Snyder noted that data obtained for the first ten months of that year revealed that the 48 overtime-eligible female employees (constituting 41.38% of NEDO's staff) received only 1,000.50 of the available overtime hours (or 30.85% of the total available hours) while male employees received 2,242.38 hours of overtime (or 69.15%).

30. Clearly, the data referenced in Paragraph 29, above, refutes any claim by OEPA that NEDO overtime opportunities always were distributed on a gender-neutral basis and instead supports a conclusion that NEDO management made concerted efforts to make overtime assignments to only certain male employees and a further conclusion that NEDO management, more generally, systematically operates with gender bias when it comes to making overtime assignments. Moreover, notwithstanding OEPA's contention that "familiarity" with a "site" was a gender-neutral criterion, the actual data reveals that not all male employees assigned overtime at a particular "site" in fact had "familiarity" with that site already, as they has never been "assigned" to that "site" in any relevant time frame. For example, one male employee offered overtime opportunities no longer had been assigned to that "site" (as he had been taken off the "site" several

9

months earlier) and another male employee held an administrative staff position at NEDO headquarters (with no responsibilities ever having been assigned to him at such "site") when he was detailed to work overtime in transporting samples to Columbus. Thus, in practice, "familiarity" with a "site" was ignored by NEDO management to steer overtime opportunities to male employees having no connection to such "site" while female employees also with no connection to such "site" were ignored, including Snyder another female employees having more seniority than all but one (1) overtime-eligible male employee assigned by OEPA to NEDO.

31. In her Public Records Act requests, Snyder asked for copies of all written policies, procedures, or other documentation to support OEPA's claim that overtime assignments at NEDO, generally, or DMWM, in particular, were made on the basis of the criteria listed by OEPA in its response to the EEOC Charge, but no such records ever were provided.

32. During her tenure with DMWM at NEDO, Snyder has been assigned to sites located in the following counties: Cuyahoga; Lake; Lorain; Ashtabula; Trumbull; Mahoning; Wayne; Holmes; Carroll; and Columbiana. As the largest of the counties serviced by NEDO, work in Cuyahoga County offers the greatest opportunities for overtime assignments for overtime-eligible staff members. Yet, to the extent the OEPA may claim that county-specific assignments would be unavailable to Snyder due to her not receiving regular-hour assignments in those counties, there is no explanation for why Snyder was overlooked consistently when it came to offering overtime assignments in Cuyahoga County in locations described by Sowers and others in NEDO management as being in "the 'hood."

33. Snyder's review of OEPA data for NEDO and the conclusions she has drawn from the same was delayed for more than a year as OEPA waged a defense to her mandamus action that finally resulted in OEPA's settling with Snyder under terms that allowed her to gain access to

all of the records she had been requesting and to reimburse Snyder for the attorney fees and expenses she incurred in bringing the mandamus action to compel such disclosures.

34. In spite of an express requirement in the collective bargaining agreement to document and administer a gender-neutral process for assigning overtime opportunities at NEDO, no such protocols have been developed or reduced to writing whereby overtime-eligible employees can be identified and canvassed, from time to time, as such opportunities would arise. Instead, NEDO management persists in its failure to adopt protocols, as required by the collective bargaining agreement, that would proscribe continued efforts to make overtime offers that take the gender of an overtime-eligible NEDO staff member into account and even though it agreed, as part of adjustment of the grievances referenced in Paragraph 18, above, to meet with Snyder's collective bargaining agent to work through the overtime assignment protocols and administrative processes prescribed by the terms of the collective bargaining agreement. To date, no such protocols are in place.

35. Upon information and belief, no male overtime-eligible employee at NEDO ever was informed, at any time relevant to this civil action, that he was denied an overtime opportunity at any given "site" because management did not want to send him into "the 'hood."

**COUNT ONE**
*Unlawful Employment Discrimination*
42 U.S.C. §§ 2000e, *et seq.*

36. OEPA is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

37. Snyder is an "employee" of OEPA within the meaning of 42 U.S.C. § 2000e(f) and a "complaining party" within the meaning of 42 U.S.C. § 2000e(*l*).

38. A true copy of the EEOC's right-to-sue notice, dated October 28, 2019, but not postmarked until October 30, 2019, is reproduced in **Exhibit B**, attached hereto, and a true copy

of the envelope bearing a postmark of October 30, 2019, by which such right-to-sue notice was delivered to Snyder by the EEOC not earlier than November 1, 2019, is reproduced in **Exhibit C**, attached hereto, the contents of each of which is hereby incorporated by reference as if fully rewritten herein.

39. In failing or refusing to make decisions respecting the assignment of overtime opportunities to Snyder at NEDO or to offer Snyder the opportunity to accept or reject any such opportunities, as required by the terms of OEPA's collective bargaining agreement governing the terms and conditions of employment of those holding the position of "Environmental Specialist and otherwise, OEPA discriminated against Snyder on the basis of her sex (Female) (a) in violation of 42 U.S.C. § 2000e-2(a)(1) inasmuch as OEPA discriminated against her in respect of her terms, conditions, or privileges of employment because of her sex (Female) and (b) in violation of 42 U.S.C. § 2000e-2(a)(2) inasmuch as OEPA limited, segregated, or classified overtime-eligible employees at NEDO in such fashion as to deprive Snyder (or tend to deprive her) of employment opportunities or to affect Snyder's status as an overtime-eligible employee at NEDO in an adverse fashion because of her sex (Female).

40. As a proximate result of the acts of OEPA, as alleged in this Count One, Snyder has suffered damages of both an economic and non-economic nature in an amount exceeding Twenty-Five Thousand and No/100 Dollars ($25,000.00) for which OEPA is liable. Additionally, OEPA is subject to an order of this court that shall enjoin NEDO management, under penalty of contempt, from administering the process by which it offers overtime opportunities to overtime-eligible employees in such fashion as to take the sex of any such employee into account.

**COUNT TWO**
*Unlawful Discrimination in the Employment Setting*
*O.R.C. §§ 4112.01, et seq.*

1-40. Plaintiff hereby incorporates by reference as if fully rewritten herein all allegations set forth or referenced in Paragraphs 1 through 36 of this complaint.

41. OEPA, at all times relevant to this civil action, was an "employer" within the meaning of O.R.C. § 4112.01(A)(2).

42. Snyder, at all times relevant to this civil action, was an "employee" within the meaning of O.R.C. § 4112.01(A)(3).

43. In failing or refusing to make decisions respecting the assignment of overtime opportunities to Snyder at NEDO or to offer Snyder the opportunity to accept or reject any such opportunities, as required by the terms of OEPA's collective bargaining agreement governing the terms and conditions of employment of those holding the position of "Environmental Specialist and otherwise, OEPA discriminated against Snyder on the basis of her sex (Female) in violation of O.R.C. § 4112.02(A).

44. As a proximate result of the acts of OEPA, as alleged in this Count One, Snyder has suffered damages of both an economic and non-economic nature in an amount exceeding Twenty-Five Thousand and No/100 Dollars ($25,000.00) for which OEPA is liable. Additionally, OEPA is subject to an order of this court that shall enjoin NEDO management, under penalty of contempt, from administering the process by which it offers overtime opportunities to overtime-eligible employees in such fashion as to take the sex of any such employee into account.

**COUNT THREE**
*Class Action to Redress Unlawful Employment Discrimination*
42 U.S.C. §§ 2000e, *et seq.*
O.R.C. §§ 4112.01, *et seq.*
Rule 23, Federal Rules of Civil Procedure

1-44.  Plaintiff hereby incorporates by reference as if fully rewritten herein all allegations set forth or referenced in Paragraphs 1 through 44 of this complaint.

45.  Snyder is one of a class of female overtime-eligible NEDO staff members.

46.  The practices of NEDO management in taking the sex of an overtime-eligible NEDO staff member into account when identifying employees to whom overtime opportunities are to be extended from time to time are common among all female overtime-eligible employees at NEDO.

47.  Each female overtime-eligible employee on NEDO's staff possesses the same interest and suffers the same injury as Snyder and is entitled to the same freedom from considerations of sex when NEDO management makes decisions respecting the identities of the employees to whom overtime opportunities shall be extended from time to time.

48.  With approximately 50 female NEDO staff members who are eligible for overtime assignments, joinder of all such staff members in this civil action is impracticable.

49.  The claims asserted by Snyder in Count One and Count Two of this complaint are typical of the claims that each female NEDO overtime-eligible employee has in redressing violations of federal and state law proscribing unlawful employment discrimination in the work setting on the basis of sex.  Moreover, any defenses to Snyder's claims would be typical of the defenses available to OEPA in respect of the claims that may be asserted on behalf of the putative class members.

14

50. Based on her personal experiences with OEPA in funding and prosecuting a mandamus action to compel the disclosure of documents needed to establish a pattern and practice of taking her sex into account when depriving her of overtime assignment opportunities and waging a grievance under the collective bargaining agreement whereby partial redress under such agreement was secured for violations of standards for administering the process by which overtime assignments are to be made, Snyder is an adequate representative of a class of all female overtime-eligible employee on the staff of NEDO and capable of advancing the interests of all putative class members through the prosecution of this civil action.

51. There exist questions of law and fact common to a class of all female overtime-eligible employee on the staff of NEDO, *to-wit*, whether management may limit, restrict, or deny opportunities for overtime assignments to any NEDO staff member out of considerations of sex, including (without limitation) failing or refusing to offer any such opportunity based on management's unilateral determination that an overtime-eligible female employee should not be permitted the opportunity to accept or turn down an overtime assignment that would require her to work in "the 'hood," thereby inflicting the same injury on each female NEDO staff members adversely affected by management's practices and discriminatory intent in this regard.

52. The common questions of law and fact referenced in Paragraphs 46 and 51, above, are of such a nature as to be capable of class-wide resolution that will offer common answers to such questions in order to drive resolution of the issues the class members have in common.

53. In the absence of class certification, prosecution of separate actions by individual class members would create a risk of (a) inconsistent or varying adjudications with respect to individual putative class members that, in turn, would risk establishment of incompatible standards

of conduct for OEPA or (b) adjudications that would, as a practical matter, dispose of the interests of others putative class members who are not parties to individual adjudications or would substantially impair or impede the ability of such other parties to protect their interests.

54. The actions of OEPA's management at NEDO, as alleged in this complaint, constitute conduct which, if proved, has been undertaken in such manner and on such grounds as apply generally to all putative class members so that final injunctive and/or corresponding declaratory relief sought by Snyder herein is appropriate respecting the proposed class as a whole.

55. A class action to address and resolve the common questions of law and fact is superior to other available methods for the fair and efficient adjudication of the controversy between Snyder and OEPA, as alleged above, in that such common questions predominate over any questions affecting only individual members.

56. In fashioning a remedy whereby individual putative class members may recover damages in respect of overtime opportunities not offered out of considerations of such members' sex, an adjudication of this civil action will allow this court to declare such remedy to be administered on terms uniformly applicable to each overtime-eligible female NEDO employee unlawfully denied such opportunities on the basis of her sex.

57. Snyder's undersigned counsel is qualified by training and experience to serve as class counsel under this Count Three in that he (a) has worked actively with Snyder in identifying and investigating the claims asserted in this complaint, (b) has experience in handling complex litigation and the types of claims asserted herein, (c) is knowledgeable in the law applicable to the claims set forth herein, and (d) has sufficient resources available to commit to prosecuting this action on behalf of a class of the size described in Paragraph 48, above.

**WHEREFORE**, having stated her cause of action, Plaintiff Katharina A. Snyder demands that this court enter judgment in her favor and against Defendant Ohio Environmental Protection Agency, granting the following relief:

(1) An award in favor of Snyder and against OEPA on Counts One and/or Two hereof in such amount(s) in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) (U.S.) as shall fully and fairly compensate her for all economic and non-economic damages proximately caused by the wrongful acts and omissions of OEPA in discriminating against her on the basis of her sex, according to proof, and as and for exemplary or punitive damages, according to proof, and further enjoining OEPA, upon successful prosecution of her claims under Count One and/or Count Two hereof, to refrain from taking her sex into account when making determinations as to whether to offer opportunities for overtime assignments;

(2) Certification of this civil action as a class action to be prosecuted against OEPA and on behalf of and for the benefit of each overtime-eligible female NEDO employee whereby each such class member shall be awarded damages, individually or collectively, in such amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) (U.S.) as shall fully and fairly compensate them and each of them for all damages proximately caused by the wrongful acts and omissions of OEPA in discriminating against such class members on the basis of their sex, according to proof, and as and for exemplary or punitive damages, according to proof, and further enjoining OEPA, upon successful prosecution of Snyder's claims under Count One and/or Count Two hereof as a class action, to refrain from taking the sex of class members into account when making determinations as to whether to offer opportunities for overtime assignments;

(3) An award of a class representative's fee to Snyder in such amount not less than ten percent (10%) of all damages awarded, in the aggregate, to all class members under Count Three of this complaint or such other amount as shall full and fairly compensate her for all services rendered by her in offering evidence in support of the claims asserted herein on behalf of all class members and in cooperating with and assisting class counsel in the investigation and prosecution of Count Three hereof, whichever is greater;

(4) An award reimbursing Snyder for all attorney fees and expenses incurred by or for her in successfully prosecuting the claims stated in this complaint, including (without limitation) such attorney fees and expenses as may be awarded by law or in equity in respect of her

        individual claims and/or under Rule 23(h) of the Federal Rules of Civil Procedure in respect all claims asserted as a class action under Count Three hereof;

(5)    An order allowing Snyder and all class members to recover from OEPA pre-judgment and post-judgment interest on the amount(s) awarded by this court in their favor; and

(6)    An order taxing the costs of this action against OEPA and providing for such other and further relief as this court may deem necessary, just, equitable, and appropriate in the circumstances.

## JURY DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury of all issues of fact joined by the pleadings filed in this matter.

*/s/ S. David Worhatch*
**S. DAVID WORHATCH**    0031174
Law Offices of S. David Worhatch
4920 Darrow Road
Stow, Ohio 44224-1406

330-650-6000 (Akron/Kent)
330-656-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@worhatchlaw.com*

**Counsel for Plaintiff**